IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| CYNTHIA CLAYBROOK, | § | |
| | § | |
| *Debtor-Appellant*, | § | |
| | § | Civil Action No. 4:08-CV-205 |
| v. | § | |
| | § | |
| RODERICK BELL, | § | |
| | § | |
| *Creditor-Appellee*. | § | U.S. Bankruptcy Court Nos. 04-44541 |
| | | and 05-4013 |

**MEMORANDUM OPINION ON APPEAL FROM BANKRUPTCY COURT**

Debtor-Appellant Cynthia Claybrook appeals from the March 31, 2008 Judgment and May 1, 2008 Order Denying Motion for Reconsideration, both entered by the Bankruptcy Court for the Eastern District of Texas, in Case Numbers 04-44541 and 05-4013[1], Hon. Brenda T. Rhodes, Presiding.

The issues on appeal are whether the bankruptcy court erred in determining that: (1) Claybrook's discharge should be barred for failure to maintain adequate financial records pursuant to 11 U.S.C. § 727(a)(3); and (2) Bell's claim should be excluded from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

On the record before it, the court finds no error in the bankruptcy court's rulings. The judgment of the bankruptcy court, therefore, is affirmed.

---

[1] Claybrook's Chapter 7 bankruptcy case number is 04-4451. The Judgment and Order Denying Motion for Reconsideration were entered in adversary case number 05-4013.

## I. Factual and Procedural Background

Claybrook was employed by Bell as an accountant[2] for his trucking company, Texas American Express, Inc. ("TAXI") beginning in May 1994. During that time, she was primarily responsible for the accounting operations of Bell's business and functioned as TAXI's chief financial officer from approximately July 1999 through December 2000, when TAXI ceased doing business. Claybrook was paid during her employment on a part-time basis as a contract consultant. After TAXI ceased doing business in 2000, Claybrook continued to assist with document production in connection with ongoing litigation between TAXI and International Harvester Corporation, among others. She also continued to provide accounting services for Bell's other businesses during that time.

In January 2002, Claybrook asked Bell for $25,000 to purchase a car. Bell termed this a loan, subject to repayment, while Claybrook apparently considered it to be an advance for her continued services during the liquidation of TAXI. Bell issued the check from his personal bank account and categorized it as a "miscellaneous expense." Bell contended that Claybrook executed a promissory note dated January 7, 2002, which contemplated repayment on a monthly basis, while Claybrook denies that she ever signed the note. It is undisputed that Claybrook never made any of the monthly payments, and that Bell never demanded payment from Claybrook.

In October 2002, Claybrook and Bell had a confrontation regarding back pay Claybrook claimed was owed to her. Bell contends that Claybrook attempted to extort money from him, and terminated her several days later. After receiving this termination letter, Claybrook switched sides

---

[2]Claybrook was a certified public accountant at the time her employment began, but relinquished her certification in 2003.

2

in the ongoing TAXI/International Harvester litigation and provided about 25,000 pages of documents to International Harvester. In return for her services between December 2002 and January 2003, International Harvester agreed to pay Claybrook $60,000. On January 21, 2003, Bell filed suit against Claybrook in Texas state court, asserting claims for the amount due under the promissory note, interest, and attorney fees.

While Bell's lawsuit was still pending, Claybrook filed a Chapter 7 bankruptcy petition on September 30, 2004. In her bankruptcy schedules, Claybrook listed a claim in the amount of $189,000 against Bell, describing it as a counterclaim against Bell in the state court lawsuit and representing to the Chapter 7 trustee at the creditors' meeting that the claim was for wrongful termination and unpaid wages during 2002.

During the December 1, 2004 creditors' meeting, Claybrook represented that she had not filed any tax returns for several years preceding her bankruptcy petition. The Chapter 7 Trustee requested a number of documents from Claybrook during this meeting, including bank statements, cancelled checks, a copy of her last tax return in 2001, a copy of a letter she claimed to have received from the Internal Revenue Service regarding her 2003 income taxes, and documentation relating to her income and expenses for 2003 and 2004. Claybrook contended that she produced 100-200 pages of documents after the meeting, and that she provided the same documents to Bell's counsel in response to discovery requests.

Bell filed his adversary complaint in Claybrook's bankruptcy proceeding on January 20, 2005. After two hearings in July and December 2007, the bankruptcy court entered a Judgment and

3

accompanying Memorandum Opinion on March 31, 2008[3] which denied Claybrook's discharge in its entirety pursuant to 11 U.S.C. § 727(a)(3) and concluded that Claybrook's obligation to Bell under the promissory note was non-dischargable pursuant to 11 U.S.C. § 523(a)(2)(A). Claybrook filed a motion for reconsideration, which was denied by the bankruptcy court on May 1, 2008.

## II. Law and Analysis

A. Standard of Review

A bankruptcy court's findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses. Bankruptcy Rule 8013; *see also Matter of Herby's Foods, Inc*., 2 F.3d 128, 130-31 (5th Cir. 1992). A finding is clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." *Matter of Missionary Baptist Foundation of America Inc.*, 712 F.2d 206, 209 (5th Cir. 1983)(quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 542 (1948)).

Issues of law are reviewed *de novo, In re SGSM Acquisition Co., LLC*, 439 F.3d 233, 238-39 (5th Cir. 2006), as are mixed questions of fact and law. *In re CPDC, Inc.*, 337 F.3d 436, 441 (5th Cir. 2003). A finding of fact which is premised on an improper legal standard, or on a proper standard improperly applied, will also be reviewed *de novo*. *Missionary Baptist Foundation*, 712 F.2d 206, 209.

---

[3] The bankruptcy court re-issued the Memorandum Opinion as corrected on April 10, 2008, stating in a footnote that the two were "identical in substance" and that the April 10 Order was issued only to "make several non-substantive clarifications and changes, including the correction of typographical errors." Memorandum Opinion (Corrected), Notice of Appeal, Ex. 4, at n.1 [4:08-cv-205, Doc. # 1].

B. Analysis

1. *Section 727(a)(3) and failure to grant a discharge*

11 U.S.C. § 727(a)(3) states that the court shall grant the debtor a discharge unless the debtor has "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case." Because maintenance of adequate financial records is a prerequisite to granting a discharge, Claybrook has the initial obligation to produce all records form which her financial condition might be ascertained. Bell then must demonstrate that these records are inadequate, and that such failure prevented Bell from ascertaining Claybrook's financial condition. *In re Dennis*, 330 F.3d 696, 703 (5th Cir. 2003). If he does so, then the burden will shift back to Claybrook to demonstrate that the inadequacy is justified under all the circumstances. *Id.*

Claybrook first argues that the bankruptcy court's denial of her discharge was based on a finding that she failed to produce records and other documents requested by the Trustee in December 2004 to Bell. Claybrook suggests that because Bell did not specifically plead such a claim either in his Complaint or in the Joint Pre-Trial Order, it is waived and denial of discharge on this basis was improper.

"A party has presented an issue in the trial court if that party has raised it in either the pleadings or the pretrial order, or if the parties have tried the issue by consent." *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 331 (5th Cir. 1994). Implied consent can be found when a party "fails to object to evidence relating to issues that are beyond the pleadings." *Haught v. Maceluch*, 681 F.2d 291, 305 (5th Cir. 1982).

5

Despite Claybrook's narrow reading of these documents, neither Bell's Complaint nor the Joint Pre-Trial Order specifically limit the inquiry to whether Claybrook produced financial records to the Trustee. Rather, both state that Claybrook failed to produce items *requested* by the Trustee; neither specifies *whom* Claybrook allegedly failed to produce the requested documents to.[4] The evidence presented at trial addressed Claybrook's record-keeping practices, including her habit of failing to keep and preserve tax returns and other financial records, and this failure was found by the bankruptcy court to have prevented Bell, the Chapter 7 Trustee, and ultimately the court, from determining Claybrook's financial condition.

Claybrook's second argument is that Bell failed to meet his burden of proof. This court disagrees. Claybrook failed to file tax returns for several years prior to bankruptcy until the eve of trial. Tax returns are the "quintessential" documents in a personal bankruptcy case. *Dennis*, 330 F.3d 696, 703 (internal quotation omitted). Claybrook's testimony at trial that she did produce her tax returns and other financial documents to Bell's attorneys is almost entirely unsubstantiated. The only evidence Claybrook produced to support this claim was a binder of documents present in the courtroom during trial, but which was neither timely designated as an exhibit nor admitted at trial.

---

[4]*See, e.g.*, Complaint at ¶ 5 [Bankruptcy Case No. 05-4013, Doc. #1]("Plaintiff Bell is informed and believes that Defendant Claybrook has failed to produce records and other documents requested by the Trustee at the § 341(a) creditors' meeting on December 1, 2004. Plaintiff Bell is also informed and believes that Defendant Claybrook has concealed, destroyed, mutilated, falsified, and/or failed to keep or preserve recorded information. . . from which Defendant Claybrook's financial condition or transactions might be ascertained, as required by 11 U.S.C. § 727(a)(3)."); Joint Pre-Trial Order at ¶ 5 [Bankruptcy Case No. 05-4013, Doc. # 43](Statement of Disputed Issues of Fact: "Whether Claybrook delivered the required documents requested by the Trustee. . . Whether Claybrook has failed to produce records and other information requested by the Trustee at the § 341(a) creditor's [sic] meeting on December 1, 2004. . . Whether Claybrook has concealed, destroyed, mutilated, falsified, and/or failed to keep or preserve recorded information. . . from which Claybrook's financial condition or transactions might be ascertained.").

Although Claybrook testified she did in fact produce such documents to Bell's counsel before trial, this is unsupported by any documentary evidence. In short, the bankruptcy court found Claybrook's testimony not credible, and this court agrees.[5]

Claybrook's final argument is that, even assuming she did fail to produce financial records, her failure was substantially justified because her personal records were located in Bell's warehouse facility and Bell refused her access to these records. Claybrook testified on the first day of trial that she had stored some personal belongings and financial records in an unused office located in the TAXI warehouse, then proceeded to contradict herself on day two by testifying that her personal records were located in the entry area of her workspace at TAXI. Two witnesses contradicted Claybrook's assertions: former TAXI employee Archie Smith, who testified that he had placed Claybrook's personal property into the unused office at her request and that it did not contain financial records, and one of Bell's attorneys, Eric Jaegers, who testified that he inventoried the items Claybrook left in the unused office and that her financial documents were not among them. The bankruptcy court, which had the opportunity to observe the demeanor of these witnesses as they testified, found Smith and Jaegers to be far more credible than Claybrook. Based on the record before it, this court concurs.

2. *Section 523(a)(2)(A) and exclusion of Bell's claim from discharge*

The bankruptcy court noted in its Memorandum Opinion that, having found Claybrook was not entitled to discharge under Section 727(a)(3), it was not necessary to reach this issue, but

---

[5]Claybrook's failure to retain financial documents and file tax returns is even more glaring in light of her graduate degree in accounting, certification as a public accountant, extensive experience in the accounting and financial areas, and that fact that she is working toward a doctorate in accounting.

7

nevertheless found that Bell's claim should be excluded from discharge pursuant to Section 523(a)(2)(A) for purposes of a complete record.

Section 523(a)(2)(A) states that a Section 727 discharge shall exclude "any debt for money, property, or services, . . . to the extent obtained y false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." The Fifth Circuit traditionally distinguished the elements of "actual fraud" and "false pretenses and false representations." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292 (5th Cir. 1994). However, the court stated more recently, and without distinguishing between the different torts, that in order for a debt to be non-dischargable under this section, the creditor must show that: (1) the debtor made a representation; (2) the debtor knew it was false; (3) the representation was made with the intent to deceive the creditor; (4) the creditor actually and justifiably relied on the debtor's representation; and (5) the creditor sustained a loss as the proximate result of his or her reliance. *In re Acosta*, 406 F.3d 367, 371 (5th Cir. 2005). Intent to deceive may be inferred from a reckless disregard for the truth or falsity of the statement, combined with the magnitude of the resulting misrepresentation. *Id.* Silence as to material facts can also constitute a false representation. *Id.*

Claybrook argues that there is little, if any, evidence that she signed and executed the promissory note and that, even if she had, she had no intent to deceive and Bell did not rely upon her misrepresentation. Claybrook alleged at trial that her signature on the promissory note was forged by Bell, a claim directly refuted by the testimony of Bell's handwriting expert, Linda James, who concluded that the disputed signature was in fact Claybrook's. The bankruptcy court, finding Ms. James's testimony more credible than Claybrook's, concluded that the representation was made. This court cannot conclude that the bankruptcy court's finding was error.

In reliance on Claybrook's representation, Bell issued her a check for $25,000. The fact that he termed the check a "miscellaneous expense" was explained at trial by Bell's reluctance to take the time to create an entirely new category of expense through his bill pay program, Quicken.[6] While Claybrook testified at trial that she had no obligation to pay the money back because she considered it an advance on future services, and therefore had no intent to deceive, the bankruptcy court found her testimony not credible because she was also paid approximately $31,000 by Bell in 2002 during the period between when the note was signed (January) and her termination (October). The bankruptcy court also found Claybrook's testimony that the $25,000 was an advance inconsistent with her claim that Bell owed her $189,000 for accounting services provided in 2002. Again, this court cannot disagree.

Finally, the fact that Bell issued Claybrook a check and executed a note which provided for monthly payments is indicative of reliance. The bankruptcy court found that the reliance was justifiable, since Bell and Claybrook had worked together for nearly eight years and that both testified they had a high degree of mutual respect for each other in January 2002. Although this court is somewhat troubled by the fact that Bell never requested re-payment, this fact does not negate his justifiable reliance when the promissory note was signed unless he had knowledge of the falsity at that time.[7] As there is no evidence Bell knew Claybrook's representation was false at the time it

---

[6]Bell generated the $25,000 check through Quicken, which requires that all checks be categorized before they can be printed. Bell testified that he categorized the check as a miscellaneous expense rather than waste time creating a new category for it, and the bankruptcy court found his testimony credible.

[7]*See, e.g., Koral Indus. v. Security-Connecticut Life Ins. Co.*, 802 S.W.2d 650, 651 (Tex. 1990)(no duty to use due diligence to discover whether the representation was false); *Arroyo Shrimp Farm v. Hung Shrimp Farm*, 927 S.W.2d 146, 153 (Tex. App. – Fort Worth 1993, no writ)(if an investigation in undertaken and fraud is discovered, Plaintiff cannot claim to have

was made, his reliance was justifiable under the circumstances. Under these facts, the court cannot say that it was error for the bankruptcy court to exclude Bell's claim from discharge pursuant to Section 523(a)(2)(A).

IT IS THEREFORE ORDERED that the Bankruptcy Court's March 31, 2008 Judgment and May 1, 2008 Order Denying Motion for Reconsideration are AFFIRMED.

So **ORDERED** and **SIGNED** this **17** day of **October, 2008.**

_____
Ron Clark, United States District Judge

---

justifiably relied on the misrepresentation); *Coastal Corp. v. Atlantic Richfield Co.*, 852 S.W.2d 714, 720-21 (Tex. App. – Corpus Christi 1993, no writ)(where Plaintiff learned the representations were false before executing a contract, reliance was not justified).